# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | 8:15CR299 |
| Plaintiff, | ) | |
| | ) | FINDINGS AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| JERRY BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion to suppress (Filing No. 19) filed by defendant Jerry Brown (Brown). Brown is charged in an Indictment with the possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). Brown seeks to suppress any statements made to law enforcement officers in Fremont, Nebraska, on March 25, 2015, and any evidence seized from his person on that same date.

The court held an evidentiary hearing on December 10, 2015. Brown was present with his counsel, Assistant Federal Public Defender Richard H. McWilliams. The United States was represented by Assistant U.S. Attorney Thomas J. Kangior. The court heard the testimony of Investigator Christian Frerichs (Investigator Frerichs) of the Dodge County Sheriff's Office (DCSO) and Officer Chad Smith (Officer Smith) of the Omaha Police Department (OPD), both assigned to the III Corps Drug Task Force (DTF). A transcript of the hearing (TR.) was prepared and filed on January 5, 2016 (Filing No. 38). There was no post-hearing briefing.

## FINDINGS OF FACT

On March 25, 2015, officers of the DTF were investigating narcotic-related activities and high-crime profile activities in Fremont, Nebraska (TR. 4). The officers, Officer Smith, Officer Hultquist, and Investigator Frerichs, observed a white Chevy Equinox utility-type vehicle in the area of the 1400 block of East 6th Street in Fremont. The officers were in an unmarked vehicle and dressed in street clothes (TR. 6). The Chevy Equinox was occupied by a male driver and a female passenger in the front passenger seat and was parked in front of a house in the 1400 block which was known to the DTF to be house related to

narcotic activities (TR. 6-7). Investigator Frerichs recognized the female passenger as Kathyrn Smolinski (Smolinski) when she exited the Chevy Equinox and walked into the residence (TR. 31). Investigator Frerichs had information through the DTF that Smolinski and the residence were involved in the distribution of controlled substances (TR. 31).

The officers followed the Chevy Equinox to a gas station, in the 200 block of South Bell Street in Fremont, where the driver exited the vehicle and entered the building (TR. 7). After the driver reentered the Chevy Equinox, the officers followed it to a brick duplex in Fremont known to the DTF as a place for illegal drug activity (TR. 7, 31-32). The officers believed the driver of the Chevy Equinox had just conducted a drug transaction with Smolinski and was about to conduct another transaction (TR. 31). The Chevy Equinox parked in front of the duplex and the officers remained a block or so away (TR. 33). The duplex was a residence of Alicia Beebe, a person known to be involved in drug trafficking by the DTF (TR. 37). Investigator Frerichs requested a Dodge County Deputy in a nearby marked Dodge County vehicle to come to the scene and contact the driver of the parked Chevy Equinox (TR. 33).

As this was happening, the defendant Brown came out of the duplex and stood in the yard approximately twenty to thirty feet from the Chevy Equinox (TR. 9, 35). Prior to this incident, the DTF had no information on Brown (TR. 41). As the uniformed Dodge County Deputy, now parked parallel to the Chevy Equinox, was talking to the driver, later identified as Toby Thompson (Thompson), Investigator Frerichs instructed Officer Smith to make contact with Brown standing in the yard while Investigator Frerichs approached the driver of the Chevy Equinox (TR. 10). The Dodge County Deputy remained in his vehicle without his emergency lights flashing and talked to Thompson through the vehicles' open windows (TR. 27). Officer Smith, wearing cargo shorts and a sweatshirt, walked up to Brown (TR. 10). Officer Smith removed his badge from his left front cargo pants pocket, displayed the badge, identified himself to Brown, and asked Brown if Officer Smith could speak with him (TR. 10-11). Officer Smith was armed but his weapon was concealed (TR. 16). Brown acknowledged Officer Smith by saying "okay" (TR. 11). Brown appeared to be focusing on what was happening with the Chevy Equinox (TR. 11).

2

Officer Smith asked Brown if he was willing to give Officer Smith his identification (TR. 11). Brown reached into his pocket and gave it to Officer Smith (TR.13). Officer Smith used his cell phone to call into dispatch to check Brown's status (TR. 13). Officer Smith immediately returned the identification to Brown (TR. 13). Shortly thereafter, Investigator Frerichs walked over to Officer Smith and Brown and asked if Brown had any methamphetamine on his person (TR. 36). Brown replied "no" (TR. 37). Investigator Frerichs asked Brown if he minded if Investigator Frerichs completed a pat-down search of Brown's person (TR. 37). Brown stated that Investigator Frerichs could conduct a pat-down (TR. 37). Brown agreed and was asked to remove items from his pockets (TR. 25). Brown removed a pack of cigarettes and permitted Investigator Frerichs to look in the cigarette pack where nothing was found (TR. 25, 37). Investigator Frerichs again asked Brown if Investigator Frerichs could complete a pat-down (TR. 25, 37-39). Brown agreed and said "yes" (TR. 37-39).

As Investigator Frerichs was patting Brown down, he felt a packet of material in Brown's left pocket (TR. 37). Investigator Frerichs asked Brown if it was dope in his pocket, and Brown replied "you know what it is" (TR. 25, 37-38). Investigator Frerichs asked Brown to take the packet out of his pocket, and Brown complied (TR. 38). The packet was a self-sealed bag containing a large amount of a white crystal-like substance (TR. 38). Investigator Frerichs kept the bag and told Brown Investigator Frerichs would talk to him later (TR. 38). Investigator Frerichs walked backed to the Chevy Equinox to talk with Thompson (TR. 38). Officer Frerichs testified he wanted to talk further with Thompson and approached Brown on a later date out of Thompson's presence to see if Brown might cooperate in the investigation (TR. 39). Brown was not arrested and allowed to leave the scene (TR. 38).

## CONCLUSIONS OF LAW

Brown argues he did not consent to the encounter with Officer Smith and Investigator Frerichs, he was seized for the purposes of the Fourth Amendment, and the pat-down of his person which located the packet of white substance was an illegal seizure.

The government argues Brown voluntarily consented to the encounter and pat-down of his person.

"Not every encounter between a police officer and a citizen constitutes a seizure under the Fourth Amendment. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred." ***United States v. Mabery***, 686 F.3d 591, 595 (8th Cir. 2012) (internal citations omitted). Taking the "position that a person is 'seized' for Fourth Amendment purposes whenever an officer interrupts what that person was otherwise doing is absurd." ***United States v. Tarantola***, 332 F.3d 498, 499 (8th Cir. 2003). Merely attempting to attract a person's attention to further investigate suspected criminal behavior "does not implicate any Fourth Amendment interest, does not amount to a seizure, and thus falls outside the ambit of the Fourth Amendment." ***Id.*** at 499-500. "Merely identifying oneself as 'Police' does not effect a seizure of a citizen who stops to listen or talk, because self-identification is not a command in the nature of 'Police, halt!' or 'Stop, in the name of the law!'" ***United States v. Hayden***, 759 F.3d 842, 847 (8th Cir.) cert. denied, 135 S. Ct. 691 (2014). "Circumstances indicative of a seizure would include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." ***Mabery***, 686 F.3d at 596.

Whether consent is voluntary is a question of fact . . . considering whether from the totality of the circumstances the officer reasonably believed the search was consensual." ***United States v. Garcia***, 613 F.3d 749, 753 (8th Cir. 2010). "The government has the burden to prove the consent was voluntary by a preponderance of the evidence and based upon the totality of the circumstances." ***United States v. Beasley***, 688 F.3d 523, 531 (8th Cir. 2012).

The tone of the encounter between Officer Smith and Brown was cooperative. While the DTF officers had no prior information on Brown, the officers may ask an individual questions and request his identification. ***United States v. Carpenter***, 462 F.3d 981, 985 (8th Cir. 2006). As Brown stood in the yard Officer Smith approached in a non-threatening manner, displayed his police badge, and asked Brown if he could talk with Brown. Brown

4

agreed. Further, Brown voluntarily provided Officer Smith with identification, which Officer Smith checked. When Investigator Frerichs joined Brown and Officer Smith, Investigator Frerichs asked Brown if he had any methamphetamine on him. Brown replied that he did not. Investigator Frerichs asked if Investigator Frerichs could pat Brown down. Brown agreed. At the time Brown agreed to the pat-down, he had not been detained, neither officer displayed any weapon, neither officer had touched Brown, neither officer ordered Brown to do anything.

I find from the totality of the circumstances and the preponderance of the evidence the encounter between Brown and Officer Smith and Investigator Frerichs was consensual. I further find Brown was not in custody at the time he responded, "you know what it is" after Investigator Frerichs asked Brown about the packet in Brown's pocket. I further find from the totality of the circumstances and the preponderance of the evidence Brown consented to the pat-down wherein the packet of white powder was found and seized.

**IT IS RECOMMENDED TO CHIEF JUDGE LAURIE SMITH CAMP that:**

Jerry Brown's motion to suppress (Filing No. 19) be denied.

## **ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 1st day of February, 2016.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge